IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE LEE ABERCROMBIE,<br>AIS #258008, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-925-WHA |
| | ) | |
| OFFICER McDONALD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Willie Lee Abercrombie, an indigent state inmate. In this complaint Abercrombie challenges the constitutionality of force used against him on September 30, 2015 and October 2, 2015 by correctional officials at Ventress Correctional Facility. Doc. 1 at 3. The first use of force occurred when Abercrombie failed to comply with several orders to return to his cell after the cubical officer mistakenly opened his cell door, whereas the second altercation transpired due to Abercrombie's refusal of multiple orders to allow the removal of his handcuffs. Doc. 1 at 2–3. Abercrombie names Officer McDonald, Officer Dennis, Sgt. Simmons, Sgt. Nolin, Capt. Cargle, Lt. Townsend, Sgt. McCovery, Officer Malden, Warden K. Jones, Capt. Harris, Sgt. Browse and Officer Terry as defendants.[1]

---

[1]With respect to any spelling discrepancies in the names of the defendants, the court will refer to each defendant as he/she is identified by the plaintiff.

Abercrombie seeks monetary damages from the defendants in their official and individual capacities for the alleged violations of his constitutional rights.  Doc. 1 at 4.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits, prison reports, medical records and DVD recordings related to the second use of force, addressing Abercrombie's claims for relief.  In these documents, the defendants deny they acted in violation of Abercrombie's constitutional rights and further argue the force used against Abercrombie consisted only of force necessary to ensure Abercrombie's compliance with various orders.   Additionally, the medical records compiled contemporaneously with the events at issue undermine Abercrombie's claims as to the the amount of force used by the defendants.  In addition, the DVD recordings completely refute Abercrombie's allegations regarding the injuries allegedly sufferedon September 30, 2015 and the actions of correctional officials during the use of force on October 2, 2015.  After receipt of the defendants' special report, the court issued an order directing Abercrombie to file a response to the report.  Doc. 25.  This order specifically cautioned Abercrombie that "**unless within fifteen (15) days form the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 25 at 3.    The court also provided Abercrombie an opportunity to respond to additional evidentiary materials submitted by the defendants in same manner as he had the

special report.  *See* Doc. 53.  Pursuant to these orders, the court deems it appropriate to treat the defendants' special report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.

Upon consideration of this motion, the evidentiary materials filed in support thereof, including the DVD recordings and body charts, the sworn complaint and Abercrombie's responses to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.* Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers

to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a

summary judgment motion."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (holding that, if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S.

521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Abercrombie's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Abercrombie has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. ABSOLUTE IMMUNITY

To the extent Abercrombie requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.   "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## IV.  DISCUSSION OF INDIVIDUAL CAPACITY CLAIMS

### A.  Relevant Facts

**1.  <u>The September 30, 2015 Incident</u>**.  On September 30, 2015, the cubicle officer accidentally opened Abercrombie's cell door in the segregation unit at Ventress.  Doc. 1 at 3.  In his affidavit, Abercrombie explains that after his door opened he exited his cell, strolled the dorm for a few minutes, then exited the dorm and walked around the facility for approximately an hour.  Doc. 26 at 1.  Upon his return to the dorm at approximately 11:56 a.m., Abercrombie encountered defendant McDonald who ordered Abercrombie to return to his cell.  Doc. 1 at 3 & Doc. 26 at 1.  Abercrombie refused this order and, instead, demanded that Warden Jones be summoned to the segregation unit to address the matter.  Doc. 1 at 3 & Doc. 26 at 1–2.  McDonald advised defendant Townsend of the situation

with Abercrombie and Townsend issued a second order to Abercrombie "to report back to his segregation cell. Inmate Abercrombie refused to comply." Doc. 23-3 at 1. Due to Abercrombie's repeated refusal of the officers' orders, additional correctional officers were summoned to provide assistance and defendants Cargle, Simmons, Nolin and Dennis reported to the scene. Doc. 1 at 3 & Doc. 26 at 2. Capt. Cargle ordered Abercrombie "to return to his cell" but Abercrombie again refused to do so. Doc. 23-5 at 1. Abercrombie attempted to explain his refusal of the order and demanded that Capt. Cargle "get Warden Jones down here now." Doc. 26 at 2 Based on Abercrombie's refusal to return to his cell, defendants Simmons, Dennis and Nolin physically gained control of Abercrombie "and escorted him back to his cell." Doc. 23-3 a 2, Doc. 23-4 at 2 & Doc. 23-5 at 2. Abercrombie alleges that during this time the officers "beat me up and threw[] me in my cell on my face, . . . bruised my ribs . . . and also broke my left thumb." Doc. 1 at 3. The defendants adamantly deny these allegations and maintain they used only the amount of force necessary to return Abercrombie to his cell, i.e., grasping him by his arms/wrists to obtain and maintain control of Abercrombie while escorting him to his cell.

At 1:00 p.m., within an hour of the incident at issue, defendant Cargle escorted Abercrombie to the health care unit for evaluation. The attending nurse observed "[n]o bruising, abrasion or redness" to any part of Abercrombie's body and noted that Abercrombie made no complaints of "pain or discomfort." Doc. 23-1 at 5. The nurse's findings directly contradict Abercrombie's allegations in the complaint regarding the injuries suffered on this day. The court also finds that the DVD recordings of October 2, 2015 show no discernible injuries to Abercrombie's face, left thumb or ribs. Specifically,

at the end of the second DVD (Disc 2), Abercrombie routinely moves, stretches, flexes and bends each of the fingers, including his thumb, on his left hand without restriction. Moreover, under circumstances which clearly impacted his left hand and ribs, Abercrombie at no time during the cell extraction referenced any pain emanating from these areas of his body (Disc 1).

    **2. <u>The October 2, 2015 Incident</u>**.  Upon return to his cell after a visit to the health care unit on October 1, 2015, Abercrombie refused to allow defendant Simmons to remove his handcuffs because Simmons failed to acquiesce with Abercrombie's demand to speak with Warden Karla Jones.  Doc. 1 at 3.  Ms. Jones avers she received information on October 2, 2015 "that inmate Willie Abercrombie . . . had handcuffs on and refused to . . . have the handcuffs removed.  I reported to [Abercrombie's cell] and instructed inmate Abercrombie to [approach] his cell door [for removal of the handcuffs].    Inmate Abercrombie refused.  I instructed Correctional Captain Pamela Harris to assemble the Cell Extraction Team.  The Cell Extraction Team assembled and entered [Abercrombie's cell]." Doc. 23-8 at 1.  The DVD recording contained on Disc 1 establishes that the Cell Extraction Team consisted of Sgt. John Pryor and defendants McCovery, Malden and Terry. Abercrombie asserts that during the cell extraction, the team members subjected him to "an excessive beating" which caused him to go "into convulsions[.]" Doc. 1 at 4.  This sworn statement is wholly refuted by the DVD recording of the cell extraction (Disc 1) as no beating of Abercrombie occurred nor did he go into convulsions during the cell extraction.

    The video recording on Disc 1 clearly depicts the following occurrences. Immediately prior to the Cell Extraction Team's entry into Abercrombie's cell, defendant

Harris once more orders Abercrombie to submit to the removal of his handcuffs.[3] Abercrombie refuses this order.  The Cell Extraction Team then enters Abercrombie's cell with the lead officer holding an electric shield.  The team uses the shield to place Abercrombie on the floor so that they can begin their efforts to obtain control of him.  The shield is removed from the cell.  Abercrombie resists the efforts of the officers to restrict his movements but, with the use of minimal force, they are able to place shackles on his legs. Despite his continuous resistance, the officers eventually remove the handcuffs from the front of Abercrombie and place the handcuffs on him to the rear of his body.  The officers then lift Abercrombie from the floor, remove him from the cell, place him in a wheelchair and transport him to the healthcare unit for evaluation.  Other than the above described force used to initially gain and thereafter maintain control of Abercrombie, no other force was used during the cell extraction. The DVD recording does not depict any beating of Abercrombie or use of unnecessary force against him.

The DVD recording followed Abercrombie as officers escorted him to the health care unit for examination.  During this time, Abercrombie did not exhibit any noticeable injuries and he voiced no complaints regarding any injury during the cell extraction. Instead, Abercrombie was belligerent and consistently threatened the officers with bodily harm, stating that if they would remove his restraints he could take them down one on one. Upon her examination of Abercrombie, the attending nurse observed only "redness" to his chest and back and a "small opened area to [his left] index finger [with] no acute bleeding."

---

[3] The handcuffs are to the front of Abercrombie at this time.

Doc. 23-1 at 8.   The nurse further noted Abercrombie had "no cuts, scratches or bruises to [his] waist, chest, back [or] legs."  Doc. 23-1 at 8.  After completion of her evaluation, the nurse released Abercrombie to the custody of correctional officers and the officers returned Abercrombie to his cell without incident (Disc 2).

## B.  Excessive Force

Abercrombie alleges the defendants used excessive force to return him to his cell on September 30, 2015 and in removing his handcuffs on October 2, 2015.  The defendants maintain that they used only the force necessary to obtain and maintain control of Abercrombie and protect everyone involved in the incidents at issue.  The defendants assert that due to Abercrombie's refusal of several orders to voluntarily return to his cell and relinquish his handcuffs, actions Abercrombie does  not dispute, the challenged uses of force were necessary to ensure his compliance with these orders.  The defendants further argue that the amount of force used was reasonable under the circumstances with which they were presented.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

13

rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."

> *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From
> consideration of such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary, or instead evinced
> such wantonness with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002); *Pearson v. Taylor*, 665

F. App'x 858, 863 (11th Cir. 2016) (identifying the five factors relevant in determining

whether force was applied maliciously or sadistically as "(1) the need for force; (2) the

relationship between that need and the amount of force used; (3) the extent of the resulting

injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived

by the responsible official on the basis of facts known to that official; and (5) any efforts

made to temper the severity of the use of force.") (citing *Whitley*, 475 U.S. at 320–21).

    "When evaluating whether the force used was excessive, we give broad deference

to prison officials acting to preserve discipline and security." *Pearson*, 665 F. App'x at

863–64 (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S.

at 7 (holding that courts are to "give a wide range of deference to prison officials acting to

preserve discipline and security."). In addition, the determination "must not be made in

the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005)

(citation omitted). "Prison guards may use force when necessary to restore order and need

not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898

F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner

"fails to obey an order. Officers are not required to convince every prisoner that their

orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F.

App'x at 864 (internal citation omitted).  "Certainly, they are not required to do so where an inmate repeatedly fails to follow those orders."  *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010).

  "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]" *Wilkins*, 559 U.S. at 38.  Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct.1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)." *Bowden*, 576 F. App'x at 953.

  Abercrombie does not dispute that he repeatedly denied orders to voluntarily return to his cell on September 30, 2015 and allow the removal of his handcuffs on October 2, 2015.  With respect to the use of force applied on September 30, 2015, the body chart compiled immediately after the incident, the DVD recordings of October 2, 2015 and the affidavits of the defendants, which are supported by the medical records and video recordings, completely undermine Abercrombie's version of events.  These evidentiary

materials demonstrate that after Abercrombie refused to obey several orders to return to his cell defendants Simmons, Dennis and Nolin grasped Abercrombie by his arms/wrists and escorted him to his cell without incident.

As to the October 2, 2015 cell extraction, the DVD recording contained on Disc 1 shows that immediately prior to the officers entering Abercrombie's cell, Capt. Pamela Harris gave Abercrombie one last order to allow the removal of his handcuffs and provided Abercrombie a final opportunity to voluntarily comply with her order, an opportunity Abercrombie refused.  When the Cell Extraction Team entered the cell, Abercrombie alleges they subjected him to a severe beating that caused him to suffer convulsions.  Doc. 1 at 4.  The video recording (Disc 1), however, shows no beating of Abercrombie and contains no footage of him having convulsions.  Rather, the video evidence demonstrates that Abercrombie verbally accosted the officers and resisted the officers' efforts to remove his handcuffs by taking the fetal position, pulling his arms to his chest and refusing access to his hands. The officers then applied that amount of force necessary to overcome Abercrombie's resistance and gain access to his hands for the purpose of removing his handcuffs.  The officers are positioned in a manner to secure Abercrombie and ensure their safety.  At no time does any officer beat Abercrombie nor does he suffer convulsions during the cell extraction.   The court finds that Abercrombie's version of events is simply untenable given the video evidence.

In cases where a party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.  The Court

further acknowledged a "wrinkle" in cases where the record contains video evidence. *Id*. at 378. Where, as here, a plaintiff's "version[s] of events is so utterly discredited by the record that no reasonable jury could . . . believe[] him[,]" the Supreme Court admonished that the lower court addressing the claims "should not [rely] on such visible fiction [but] should . . . view[] the facts in the light depicted by the videotape." *Id*. at 380–81. Because the stories told by Abercrombie are contradicted by the record in this case, including the DVD recordings, no reasonable jury could believe his musings, and, therefore, this court does not adopt his versions of the facts for the purpose of ruling on the defendants' motion for summary judgment. Under the circumstances of this case, "the record taken as a whole could not lead a rational trier of fact to find for [Abercrombie], [therefore] there is no 'genuine dispute for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Upon review of the DVD recordings and after examining the facts of this case in accordance with the relevant *Whitley* factors, it is clear that the defendants did not subject Abercrombie to uses of excessive force as prohibited by the Eighth Amendment. Instead, the objective evidence and facts due acceptance by this court demonstrate that there was a need for the exercise of force in light of Abercrombie's repeated refusals to comply with several orders to return to his cell and allow correctional officials to remove his handcuffs. This evidence also establishes that the officers used a reasonable amount of force against Abercrombie to ensure his compliance with these orders. Specifically, the September 30, 2015 body chart and Disc 2 demonstrate that Abercrombie did not suffer a broken thumb or serious rib injury during the September 30, 2015 alteration, as alleged in the complaint.

In addition, Disc 1 clearly shows that the force utilized throughout the October 2, 2015 cell extraction was minimal and applied in a good-faith effort to gain/maintain control of Abercrombie and secure the safety of the officers involved. Finally, the relevant evidence establishes that the defendants did not apply force in a sadistic or malicious manner. The defendants are therefore entitled to summary judgment on the excessive force claims.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that on or before **January 28, 2019** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 14th day of January, 2019.


_____ /s/ Wallace Capel, Jr.  _____
CHIEF UNITED STATES MAGISTRATE JUDGE